UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
JULIE A. HARRELL,                                            :
:
                          Plaintiff,    :
:          08 Civ. 8252 (GEL)
  -v.-                                                      :
:          **OPINION AND ORDER**
ROBERT VAN DER PLAS, CYCLE                                   :
PUBLISHING / VAN DER PLAS                                    :
PUBLICATIONS                                                 :
:
                         Defendants.   :
:
------------------------------------------------------------x

David Atlas, Hernstadt Atlas LLP, New York, New York, for plaintiff.

Philip R. Green, Law Offices of Green & Green, San Rafael, California, for defendants.


GERARD E. LYNCH, Circuit Judge:[1]

      Plaintiff commenced this action on September 25, 2008, alleging that defendants Robert Van der Plas and Cycle Publishing / Van der Plas Publications violated her rights under the Copyright Act by republishing and selling copies of one of her books without her authorization. On June 19, 2009, upon plaintiff's acceptance of an offer of judgment pursuant to Rule 68, Fed. R. Civ. P., this Court entered judgment in favor of plaintiff in the amount of $7,500, directed the defendants to turn over to plaintiff all remaining copies – save a few – of the book entitled *A Woman's Guide to Bikes and Biking* in their possession, custody or control, and permitted plaintiff, over defendants' vigorous objections, to seek an award of costs, including reasonable

---

[1] The Honorable Gerard E. Lynch, United States Court of Appeals for the Second Circuit, sitting by designation.

attorneys' fees. On July 3, 2009, plaintiff moved for such an award. The application seeks $76,840 in attorneys' fees, and costs in the amount of $624.97. Defendants challenge almost every aspect of plaintiff's application, arguing that the Copyright Act's fee-granting provision does not apply to this action, and that even if the fee provision does apply, a discretionary award of fees would be inappropriate, and that the fees sought are unwarranted or excessive on a number of grounds.

The Court assumes the parties' familiarity with the underlying facts and the Court's prior opinions in the case. For the following reasons, plaintiff's motion will be granted to the extent set forth below.

## DISCUSSION

I.  **Attorneys' fees**

   A.  Legal Standard

In a copyright action, a court may award costs and attorneys' fees to a prevailing party. See 17 U.S.C. § 505.[2] Such fees are "not to be awarded automatically to a prevailing party . . . but 'only as a matter of the court's discretion.'" Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1001 (2d Cir. 1995), quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). In determining whether such an award is appropriate the court should consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and

---

[2] There is no dispute here that plaintiff is a prevailing party under the statute. A party that accepts a Rule 68 offer of judgment is a prevailing party. See Lyte v. Sara Lee Corp., 950 F.2d 101, 105 (2d Cir. 1991) ("No adjudication of rights or admission of fault is necessary for a fee award.").

deterrence," so long as these factors further the purposes of the Copyright Act. Fogerty, 510 U.S. at 534 n. 19 (internal citations and quotations omitted); see also Knitwaves, 71 F.3d at 1011-12.

As to the amount of attorneys' fees to award, courts determine the appropriate remuneration by calculating a "presumptively reasonable" fee – "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The reasonable hourly rate reflects what a paying client would be willing to pay, and the hours "reasonably expended" are those actually expended by counsel minus "excessive, redundant, or otherwise unnecessary" hours. Id. at 434; see Arbor Hill Citizens Neighborhood Ass'n v. County of Albany ("Arbor Hill II"), 522 F.3d 182, 183 (2d Cir. 2008) (substituting the terminology "presumptively reasonable fee" for the older "lodestar" terminology, although the methodology of calculating the fee remains substantially the same).

Following the determination of the presumptively reasonable fee, the court must then consider whether an adjustment of the fee is warranted based on factors such as "financial disparities between the parties." Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., No. 96 Civ. 4126, 2004 WL 728878, at *5 (S.D.N.Y. Apr. 6, 2004), but the Court need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation" in crafting a fee award, Seigal v. Merrick, 619 F.2d 160, 164 n. 8 (2d Cir. 1980). As the Supreme Court has indicated, "a request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case. See id.

B.     Applicability of 17 U.S.C. § 505

Defendants contend that plaintiff is not entitled to recover fees under 17 U.S.C. § 505 because this action did not involve a breach of plaintiff's copyright, but was, rather, "essentially a contract dispute" involving the scope of the 1999 publishing agreement that purportedly gave defendants the right to reproduce and distribute the original edition of plaintiff's book. Defendants' argument is unpersuasive.

Plaintiff brought this action under the Copyright Act. Her primary allegation was that defendants "willful[ly] and egregious[ly] violat[ed her]valuable intellectual property rights." (Compl. ¶ 1.) Specifically, she alleged – not that defendants reproduced and distributed copies of the original edition of her book, which was the subject of the 1999 agreement – but that defendants, in 2008, two years after "all publishing rights" had reverted to plaintiff, "created and published a revised edition of the [book] containing, among other things, new and additional photographs, captions and body text," all of which were "substandard, with poor quality photographs, substandard paper stock, and an unprofessional layout." (Compl. ¶¶ 14-15.)

Plaintiff's claim sounds, on its face, in copyright – namely, that defendants "infringed plaintiff's copyright by publishing . . . and offering for sale a *revised edition* of [her book] in interstate commerce without [her] permission, license or consent." (Compl. ¶ 22 (emphasis added).) Defendants' argument to the contrary is strained. While not disputing the existence of the revised edition along the lines alleged by plaintiff, defendants argue that plaintiff authorized the revised edition when, by way of the 2006 agreement (Atlas Reply Aff. Ex. A), defendants were permitted to continue selling copies of the *original* edition notwithstanding that "all publishing rights" for the book otherwise reverted to plaintiff. This argument is puzzling, and

certainly no answer to plaintiff's fundamental grievance regarding the publication and distribution of an entirely new and unauthorized edition. Nor does defendants' version of events plausibly transform this otherwise classic action for copyright infringement into one for breach of contract. It is black-letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license. See Rogers v. Koons, 960 F.2d 301, 306 (2d Cir. 1992).

Defendants offer no precedent in support of their argument, and courts have consistently rejected attempts by similarly-situated defendants to restyle claims for copyright infringement – which subject defendants to hefty penalties[3] and awards of fees and costs – as breach of contract claims. See e.g., Eastern Broadcasting Am. Corp. v. Universal Video, Inc., No. 04 Civ. 5654, 2006 WL 767871, at *2 (E.D.N.Y. Mar. 24, 2006) (finding that where a party uses copyrighted material in a way that exceeds the duration or scope of a previously-granted license, the resulting claim is for copyright infringement, not breach of contract); Marshall v. New Kids on the Block Partnership, 780 F. Supp. 1005, 1008 (S.D.N.Y. 1991) (the existence of a prior license is no bar to a copyright claim because a copyright licensee can make itself a "stranger" to the licensor by exceeding the duration or scope of the license).[4] Indeed, defendants' position appears to boil

---

[3] Statutory damages may be awarded under the Copyright Act from $750 to $30,000 per work infringed, whether willful or not, and enhanced damages up to $150,000 per willful infringement. See 17 U.S.C. § 504.

[4] Defendants' attempts to distinguish these cases by arguing that plaintiff's permission to sell the remaining stock meant that "defendant Van der Plas was not a stranger . . . because all rights had not been terminated or expired," and therefore the action must necessarily be one for breach of contract (D. Opp. at 6), is without merit. The issue is not whether Van der Plas had some shred of consideration from plaintiff, but whether his publication and distribution of a completely different version of plaintiff's book exceeded the duration or scope of his license. To this point, defendants have no answer.

down to the unsupportable assertion that the mere existence of a previously-granted license offers them immunity against federal copyright law because by virtue of a past relationship they could not possibly be "strangers" to the plaintiff.  But, if "all publishing rights" reverted to the plaintiff in 2006, defendants had no greater right to publish a "new" edition of the book than any other person, and plaintiff has stated a claim for infringement arising under the copyright laws. Accordingly, plaintiff's claims fall squarely under the Copyright Act, and she may seek an award of costs as a prevailing party under the statute.

      C.      Defendants' Position Was Objectively Unreasonable

An award of reasonable costs and attorneys' fees under § 505 is discretionary, but such an award is appropriate in this case because defendants' position was objectively unreasonable. A defense to a copyright infringement claim is "objectively unreasonable when the [defense] is clearly without merit or otherwise patently devoid of a legal or factual basis." Diplomatic Man v. Nike, Inc., No. 08 Civ. 139, 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009), quoting Contractual Obligation Prods., LLC v. AMC Networks, Inc., 546 F. Supp. 2d 120, 125 (S.D.N.Y. 2008).  Of the Fogerty factors, "objective reasonableness" is accorded "substantial weight." Bauer v. Yellen, 548 F. Supp. 2d 88, 96 (S.D.N.Y. 2008), quoting Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001) (finding that "[t]his emphasis on objective reasonableness is firmly rooted in Fogerty's admonition that any factor a court considers in deciding whether to award attorneys' fees must be faithful to the purposes of the Copyright Act"); see also Crown Awards. Inc. v. Discount Trophy & Co., Inc., 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008).  Indeed, many courts in this district have found that the objective unreasonableness of a party's claims or defenses is sufficient to subject a party to an award of

attorney's fees under § 505 "without regard to any other equitable factor." Hudson v. Universal Studios. Inc., 04 Civ. 6997, 2009 WL 536564, at *2 (S.D.N.Y. Mar. 4, 2009). While courts have declined to award fees where, in addition to lacking wilfulness, the defendants acted in good faith in resisting the claim, see, e.g., New Line Cinema Corp. v. Russ Berrie & Co., 161 F. Supp. 2d 293, 304-05 (S.D.N.Y. 2001) (finding that defendants' infringing actions were "innocent"), both evidence of willfulness and the lack of objective reasonableness of the defendants' position on the merits of this copyright claim make such case law inapplicable here.

   Defendants' defense to plaintiff's infringement claim rests on the contention that plaintiff authorized the revised edition when, in fact, defendants offer no evidence – indeed no plausible argument – for such authorization. In seeking to dismiss the complaint, defendants originally put forward a "co-authorship" argument which did not rely on their having obtained plaintiff's consent for the revised edition. (See D. Motion to Dismiss at 2-7.) But, perhaps because the Court has already warned that such an argument has "obvious legal problems," see Order on Motion to Dismiss, at 1 (Mar. 24, 2009), defendants have now put forward an additional argument in some tension with that position, namely that the 2006 agreement permitted defendants to publish a revised edition of the book because the agreement allowed defendants to sell whatever copies of the *original* edition of the book were left. Neither of these arguments – nor the two of them put together – presents an objectively reasonable defense to plaintiff's infringement claim. The co-authorship assertion relies on the premise that defendant Van der Plas believes to this day that he is the co-author of plaintiff's book despite the fact that he, himself, registered the copyright solely in plaintiff's name. The second assertion relies on the somewhat contradictory premise that, despite agreeing in 2006 that "all rights" to the original

edition had reverted to plaintiff, defendants could also publish a second, *different* edition without plaintiff's permission because plaintiff had consented to defendants' selling whatever copies of plaintiff's original book remained.  These curious positions are indicative of the kind of willful infringement that is the touchstone of a discretionary award of attorneys' fees.[5]  See Screenlife Establishment v. Tower Video, Inc., 868 F. Supp. 47, 52 (S.D.N.Y. 1994).

Moreover, unlike the many cases where the Court must balance "the potentially chilling effect of imposing a large fee award on a plaintiff [copyright-holder], who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim," Bender, 240 F.3d at 122, here, the only question is whether defendants were objectively reasonable in resisting plaintiff's claim, such that plaintiff should not be awarded her attorneys' fees despite having vindicated her rights.  Here, plaintiff is entitled to an award of costs and attorneys' fees not only because defendants' positions transparently lack any "legal or factual basis," Diplomatic Man, 2009 WL 935674, at *3, but also because such an award is consistent with the goals of the Copyright Act.  The primary purpose of the Act is to "encourage the origination of creative works by attaching enforceable property rights to them."  Bender, 240 F.3d at 122, quoting Diamond v. Am-Law Publ'g Corp., 745 F.2d 142, 147 (2d Cir. 1984).  Here, an award of attorneys' fees will provide compensation to an author-plaintiff, who was forced to pursue this litigation in the face of obviously losing positions on the part of defendants.  Notably, defendants' conduct is directly responsible for many of the costs and fees plaintiff had to expend, including the briefing of a

---

[5] Nor is this a case where the issues are so "novel" so as to make an award of attorney's fees inappropriate.  Cf. Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001), citing Lotus Dev. Corp. v. Borland Int'l, Inc., 140 F.3d 70, 75 (1st Cir. 1998).  That is, it cannot be said that any aspect of this case "clarifies the boundaries of copyright law."  Id.

largely frivolous motion to dismiss, and further motion practice occasioned by defendants' decision to file, in plaintiff's name, an unwarranted arbitration claim just three days after the Court denied defendants' motion to dismiss.  Not only was defendants' decision to force plaintiff to litigate without colorable basis, but defendants also chose to pursue the matter in a particularly vexatious manner that multiplied plaintiff's expenses.

Further, an award of fees will serve to deter future infringers who will be put on notice that they may be called upon to compensate a plaintiff for expenses that directly result from requiring her to file a lawsuit to enforce her rights.  The relative equality of the parties' position – plaintiff is an author of a niche book and defendants are a small, independent press – only underscores this point.  Far from defendants' position that plaintiff's application should be denied because the judgment is already substantially more than the trivial profits defendants earned from any purported infringement, such an award is "particularly justified" where defendants' actual profits from the infringement were relatively small.  See Crown Awards. Inc. v. Discount Trophy & Co., Inc., 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008), citing Assessment Techs. of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 437 (7th Cir. 2004) (Posner J.,).  "For without the prospect of such an award, the [injured] party might be forced into a nuisance settlement or deterred altogether from enforcing his rights."  Id.  Put simply, the purpose of the Copyright Act – to encourage the prosecution of meritorious claims – does not shift based on the modest means of the parties.  Indeed, it is telling that defendants point to only one precedent – a decision from 1968 that is easily distinguishable, see Morser v. Bengor Products Co., 283 F. Supp. 926, 929 (D.C.N.Y. 1968) (finding that the infringement was a "mistake") – where court in this district exercised its discretion not to award attorneys' fees to *prevailing* plaintiffs.

In sum, in light of defendants' willful disregard of plaintiff's copyright interests, the need to compensate plaintiff for her expenses in pursing this action, and the importance of deterring both defendants and others from engaging in copyright violations, plaintiff is entitled to an award of attorneys' fees and costs. Having determined that attorneys' fees are warranted in this case, it is now necessary to consider the amount of such an award.

  D.  The Presumptively Reasonable Fee

    1.  Reasonable Hourly Rate

The reasonable hourly rate is the rate a paying client would be willing to pay. Arbor Hill II, 522 F.3d at 183. Courts are also to "bear in mind all of the case-specific variables" that contribute to what the hypothetical reasonable client would pay, with the understanding that the reasonable client "wishes to spend the minimum necessary to litigate the case effectively." Id. at 190.[6] A court should determine this rate by relying on both "its own knowledge of comparable

---

[6] These variables include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany ("Arbor Hill I"), 493 F.3d 110, 114 n. 3 (2d Cir. 2007), citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). As Judge Francis recently noted,

> While the Second Circuit held in Arbor Hill that all relevant variables should be taken into account in ascertaining a reasonable hourly rate, some of those variables, such as 'the time and labor required' and 'the time limitations imposed by the client or the circumstances,' are more logically related to determining the number of hours that should be compensated, and others, such as the extent of success, might be considered either in setting the number of compensable hours or in making a further adjustment after a presumptive fee has been established. In any event, as long as each factor is accounted for, it does not ultimately matter

rates charged by lawyers in the district," Morris v. Eversley, 343 F. Supp. 2d 234, 345 (S.D.N.Y. 2004), citing Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682, 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997), as well as on "evidence submitted by the parties," Farbotko v. Clinton County of N.Y., 433 F.3d 204, 209 (2d Cir. 2005).

Plaintiff retained David Atlas of the New York law firm Hernstadt Atlas LLP, for purposes of pursuing this action.[7] Defendants do not object to Atlas's representation that his standard billing rate is $400 per hour, or that his rate is comparable to the rates charged by attorneys with similar levels of experience in copyright and trademark cases. Nor is such a rate excessive in this district. See Crown Awards, 564 F. Supp. 2d at 297-98 (awarding $520 and $485 an hour to partners); Diplomatic Man, 2009 WL 935674, at *5 (awarding $650 per hour to partners). Accordingly, the Court finds that plaintiff's request of $400 per hour is a "reasonable" hourly rate.

### 2. Hours Reasonably Expended

After assessing reasonable rates, the court must then determine the reasonable number of hours billed to the matter in order to calculate the presumptively reasonable fee. See Arbor Hill II, 522 F.3d at 189-90. In reviewing the fee application, the court must exclude hours that were not "reasonably expended." Hensley, 461 U.S. at 434. To do so, the court must look not only to

---

where in the analysis it is applied.

Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 537 n. 1 (S.D.N.Y. 2008) (citation omitted).

[7] Atlas was the only attorney to bill time to the matter. He was admitted to practice in 1988. He became a partner at Frankfurt Garbus Klein & Selz, PC (subsequently known as Frankfurt Kurnit Klein & Selz), where his practice focused primarily on copyright and trademark litigation. In 2008, Atlas formed his own law firm, Hernstadt Atlas LLP, with Edward Hernstadt. (See Atlas Aff. ¶ 30.)

the "contemporaneous time records that specify for each attorney, the date, hours expended, and nature of the work done," but also "to its own familiarity with the case . . . and its experience generally." New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Clark v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Where documentation of billable hours expended is deficient, the court may reduce the fee award accordingly. See Hensley, 461 U.S. at 433. This reduction may be done either by excluding "excessive, redundant or otherwise unnecessary hours" from the calculation, Quarantino, 166 F.3d at 425, or by making an across-the-board reduction, or percentage cut, in the number of hours. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997). In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant, 973 F.2d at 99.

Here, plaintiff has submitted contemporaneous time records in support of the motion. See Carey, 711 F.2d at 1148. The records are arranged by date and provide a description of the tasks Atlas performed, and state the number of hours expended on the tasks. (See Atlas Aff. ¶¶ 29, 31.) Accordingly, defendants' threshold objection that the application is "without merit because there are no . . . contemporaneous time records" (D. Opp. to Atty Fees at 10-12), is unsubstantiated.

Next, defendants contend – without pointing to any specific entries – that Atlas's entries are impermissibly vague or "block-billed" such that the application should be denied in its entirety. A court may reduce entries that "are too vague to sufficiently document the hours claimed," Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998), because entries lacking

sufficient detail "cannot be evaluated for reasonableness."  <u>Ursa Minor Ltd. v. Aon Fin. Products, Inc.</u>, No. 00 Civ. 2474, 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001).  A review of Atlas's billing entries, however, demonstrates that the level of detail with which counsel's records were kept is sufficient to accurately determine that the claimed hours are wholly reasonable.  To the extent that entries are "block-billed," it is possible to infer the nature of the work performed from the context of the entry – and such entries are hardly pervasive.

Next, defendants contend that the documented hours are excessive because Atlas himself "performed all of the legal services in this matter," rather than relying on associates or others to perform "basic research and letter writing." (D. Opp. to Atty Fees at 11.)  Because the issue is whether a reasonable paying client would pay a partner to draft routine correspondence or conduct basic research, this point has some merit.  See <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u> ("Arbor Hill I"), 493 F.3d 110, 112 (2d Cir. 2007) (finding that the district court "step[s] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively").

A review of Atlas's bills in this instance, however, indicates that only a fraction of Atlas's time could reasonably have been assigned to others, and that his entries are leanly billed – indicative of the economy of having an expert, practiced litigator perform the required legal services.  Accordingly, while Atlas' exercise of billing judgment was, for the most part, reasonable, some entries do reflect time spent on elementary or clerical tasks.  The Court will thus deduct 15 percent of the hours billed – "a reasonable percentage of the number of hours claimed."  See Kirsch, 148 F.3d at 173.  This reduction is on the low end of the scale because the overall number of hours sought are reasonable to begin with – there is very little fat to be

trimmed.  Id.

Finally, defendants claim that the hours billed are excessive because in response to defendants' filing a Demand for Arbitration, plaintiff took legal action rather than "contact opposing counsel."  (D. Opp. to Atty Fees at 11.)  However, in determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant, 973 F.2d at 99.  Given that defendants filed for arbitration in plaintiff's name – whether this was done as an honest mistake or in bad faith – it cannot be said that it was unreasonable for plaintiff to have sought an ex parte application in response.  Moreover, the work performed by plaintiff's counsel in addressing whether the action belonged in arbitration – an issue that *defendants* raised and then pursued by filing a motion to compel – would have been performed in any event, given defendants' strategic decision to attempt to change forums.  Accordingly, the time plaintiff spent researching and briefing the issue was not unreasonable.

### 3.     Total Attorneys' Fee Award

For the reasons set forth above, and after reducing the number of hours by 15 percent, reasonable attorneys' fees are calculated as $65,314.

### E.     Relative Financial Strength

Finally, it should be noted that "financial disparities may be a factor considered in determining the magnitude of an award once it has been resolved that such an award is appropriate."  Hudson, 2009 WL 536564, at *2, citing Penguin Books, 2004 WL 728878, at *5.  Here, however, there is no obvious "disparity" in resources between the parties as both Harrell

and Van der Plas appear to be persons of modest means. Plaintiff Harrell authors books about women and cycling. Defendant Van der Plas asserts that he is seventy-one, and has few or no financial resources, but offers no concrete information about either his personal assets or the assets of his publishing company, Van der Plas Publications. (Van der Plas Aff. ¶¶ 12-14). This failure to provide adequate and reliable financial information prevents the Court from exercising its discretion to reduce the presumptively reasonable fee award on Van der Plas's behalf. See Contractual Obligation Productions, LLC v. AMC Networks, Inc., 546 F. Supp. 2d 120, 132 (S.D.N.Y. 2008). Moreover, Van der Plas was apparently able to find the resources to escalate litigation expenses to both sides by the repeated filing of meritless motions in an effort to deflect a modest and meritorious case that could and should have been settled for little or no financial cost at the outset. Accordingly, it seems unlikely that even if Van der Plas had properly documented his financial status and that of the business he owns, that a court would find that "the relative financial strength of the parties is so disproportionate that the purposes of the Copyright Act will be served by a relatively small award." Williams v. Crichton, No. 93 Civ. 6829, 1995 WL 449068 (S.D.N.Y. July 26, 1995). To the contrary, courts in this district have noted that a party's mere "lack of resources is not relevant to whether an award of fees is appropriate." Hudson, 2009 WL 536564, at *3. Here, the record is simply insufficient to support a conclusion that there is a substantial disparity in the financial strength of the parties such that defendants may avoid paying plaintiff's fees.

**II.    Costs**

Plaintiff also seeks reimbursement of $624.97 in litigation costs. This sum is broken down into $350 for the fees associated with the filing of the summons and complaint, and

15

$274.97 for process server fees associated with the serving of the same. These costs are minimal, appropriately documented, and comprise the ordinary and reasonable expenses attendant to the litigation. Defendants do not object to them. Accordingly, plaintiff's request for costs is granted in full.

## CONCLUSION

The decision to award fees and costs in any particular case is committed to the Court's discretion. See Fogerty, 510 U.S. at 534. For the foregoing reasons, plaintiff's motion for an award of reasonable costs and attorneys' fees against defendants pursuant to 17 U.S.C. § 505 is granted. Accordingly, plaintiff shall be awarded $65,314 in attorneys' fees and $624.97 in costs, for a total of $65,938.97.

SO ORDERED.

Dated: New York, New York
       November 9, 2009

_____
GERARD E. LYNCH
United States Circuit Judge